UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PHILLIP CHARLES SOLOWESZYK,
    Plaintiff,
v.

AMERIPRISE FINANCIAL, INC.,
    Defendant.

## COMPLAINT

Plaintiff, PHILLIP CHARLES SOLOWESZYK, (hereinafter "Plaintiff"), by his undersigned, hereby files this Complaint and sues Defendant, AMERIPRISE FINANCIAL, INC., for Injunctive Relief, attorney's fees, litigation expenses and costs pursuant to Title III of the Americans with Disabilities Act, as amended, 42 U.S.C. §§s 12181-12189 (hereinafter the "A.D.A"), 28 C.F.R. Part 36, *et seq*.

## JURISDICTION AND VENUE

**1.** Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

**2.** Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See* also 28 U.S.C. § 2201 and § 2202.

## PARTIES

**3.** Plaintiff, PHILLIP CHARLES SOLOWESZYK, is a Florida resident. He lives in Palm Beach County, Florida, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. §§ 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in

42 U.S.C. 3602, §802(h). Plaintiff was diagnosed as having suffered with retinal disease at the age of 16. In 2017, his vision got much worse, and he was diagnosed as legally blind. Later, in 2019, he was diagnosed with a rare genetic eye disease known as Stargardt's.

4. Plaintiff is a visually impaired and legally blind person who requires assistive technology to read websites and mobile application content using his computer, phone and other mobile devices. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Plaintiff's disability is defined in 28 C.F.R. §36.105(b)(2).

5. Plaintiff remains a socially active individual who enjoys reading with assistive devices and traveling. He worked for more than 20 years in the software industry, and also enjoys concerts, plays and dining out.

6. Plaintiff brings this action against Defendant for offering and maintaining an App and a Mobile Website (software that is intended to run on mobile devices such as phones, iPads, tablets and/or computers) that is not fully accessible and independently usable by visually impaired consumers. Plaintiff utilizes the Apple Screen Reader Voiceover software to read computer materials and/or access and comprehend internet Mobile Website information which is specifically designed for the visually impaired.

7. The mobile application at issue is called "*Ameriprise Financial*" (the "App") and is available through the Apple "app store" for download and installation on Apple devices. Plaintiff banks at Ameriprise and uses it brick and mortar locations as well. Plaintiff would like to use the Mobile Website and App in tandem with and to be able to find Ameriprise financial advisors at a brick and mortar location near him.

8. Plaintiff brings this civil rights action against Defendant for their failure to design, construct, maintain, and operate a mobile application (software that is intended to run on mobile devices such as phones or table computers) that is not fully accessible to and independently usable by Plaintiff and other blind or visually impaired persons. The mobile application at issue is called "*Ameriprise Financial*" (the "App") and is available through the Apple "app store" for download and installation on Apple devices. Defendant developed the App and made it available to millions of phone and tablet users in the Apple app store. The U.S. Supreme Court recently observed that apps allow users to "send messages, take photos, watch videos…donate to charities, and the list goes on. 'There's an app for that' has become part of the 21st-century American lexicon." *Apple, Inc. v. Robert Pepper*, 139 S.Ct. 1514, 203 L.Ed.2d 802 (May 13, 2019).

9. Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting his civil rights. As such, he monitors mobile websites and mobile applications or apps to ensure and determine whether places of public accommodation and/or their Mobile Websites are in compliance with the ADA.

10. The blind have an even greater need than the sighted to shop and conduct transactions online due to the challenges faced in mobility. This fact is even more prominent today in light of the Covid-19 pandemic. The lack of an accessible App means that blind people are excluded from experiencing transacting with Defendant's App and from purchasing goods or services from Defendant's App.

11. Defendant, AMERIPRISE FINANCIAL, INC., is a corporation organized in the State of Delaware, with headquarters in Minneapolis, Minnesota, that is authorized to transact business through the United States, including specifically the State of Florida where the Plaintiff accessed Defendant's Mobile Website and App, which owns and operates a financial services

organization branded "Ameriprise Financial", a place of public accommodation. Defendant's financial services organization is operated mostly online through its website, Mobile Website, and App, and is open to the general public. As such, it is a Place of Public Accommodation subject to the requirements of Title III of the ADA and its implementing regulation as defined by 42 U.S.C. §12181(7)(B), §12182, and 28 C.F.R. §36.104(2). Defendant's financial services organization is also referenced throughout as "place of public accommodation" or "Ameriprise Financial." Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates the financial services organization and App known as Ameriprise Financial 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104(2).

**12.** Subsequent to the effective date of the ADA, Defendant constructed, or caused to be constructed, the Mobile Website "www.ameriprise.com" (hereinafter "Mobile Website") for the general public to access on their mobile devices (phones, tablets). This Mobile Website and the App support, are an extension of, are in conjunction with, and are complementary and supplemental to, Defendant's "financial services organization."

**13.** The Mobile Website is offered by Defendant as a way for the public to become familiar with "Ameriprise Financial" and the services offered by Ameriprise Financial, and other information Defendant seeks to communicate to the public. Through the Mobile Website and App the public can learn about, apply for, and manage insurance policies, annuities, investment accounts, and other financial accords and services. The Mobile Website also provides the ability for the public to contact Ameriprise Financial and/or their advisors for information about these financial products and is an integral part of the goods and services offered by Defendant. By this nexus, the Mobile Website is characterized as a Place of Public Accommodation to Title III of the ADA[1], 42 U.S.C. §§ 12181(7)(B) & (E) and 28 C.F.R. §36.104(2) and (5).

14. Defendant's Mobile Website and App allow mobile device users to use a mobile platform through a connection to Wi-Fi or cellular data so that users can manage their financial accounts, insurance policies, annuities, investment accounts, and other products/services from their mobile device. As such, it has subjected itself to the ADA because its Mobile Website is offered as a tool to promote, advertise and sell its products and services online, which is a place of public accommodation. As a result, Defendant's Mobile Website must interact with its financial services organization and the public, and in doing so must comply with the ADA, which means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the goods and services afforded to the general public.

15. Defendant's Mobile Website and App does not properly interact with the Voiceover screen reader software technology in a manner that allows blind and visually impaired individuals to comprehend the Mobile Website and App and does not provide other means to accommodate blind and visually impaired individuals.

16. Like the sighted, Plaintiff would like the opportunity to be able to test whether he can use Defendant's Mobile Website and App to comprehend the products, accounts, and/or services which Defendant offers the general public. However, unless Defendant is required to eliminate the access barriers at issue and required to change its policies so that access barriers do not reoccur, Plaintiff will continue to be denied full and equal access to the Mobile Website as described.

17. Plaintiff has a continuous awareness of the violations on Defendant's Mobile Website and App and knows that it would be a futile gesture to attempt to utilize either. Those website barriers must be identified, prevented, and removed so that all Title II and Title III entities offering websites are accessible to people with disabilities.

18. Defendant is fully aware of the need to provide full access to all visitors to its Mobile Website as such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation of blind and low-vision individuals from the rest of society.

19. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this action is his only means to secure adequate redress from Defendant's discriminatory practice.

20. Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Plaintiff is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

21. Plaintiff has been obligated to obtain counsel in this matter. Plaintiff is entitled to recovery of his attorney's fees, costs and expenses from Defendant pursuant to 42 U.S.C. §12205 and 28 CFR §36.505.

## COUNT I
## VIOLATIONS OF TITLE III OF THE ADA

22. The ADA requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective, which includes the provision of auxiliary aids and services for such purposes.

23. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

24. According to 28 C.F.R. Section 36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems." 28 C.F.R. Section

36.303(b)(2) specifically states that (Voiceover) screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

25. 28 C.F.R. Section 36.303(c)(1)(ii) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability."

26. Defendant's Mobile Website and App have been designed to integrate with its financial services organization through the provision of the products, accounts, and services offered to the general public by Defendant. By and through its Mobile Website and App, Defendant extends its financial services, accounts, advisors, and products into individual persons' homes and portable devices wherever located, therefore the Mobile Website and App are a service, facility, privilege, advantage, benefit, and accommodation of Defendant's financial services organization and are a nexus to its business. Therefore, it is governed by the following provisions:

    a. U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

    b. 42 U.S.C. Section 12182(b)(1)(A)(i) provides: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity[.]"

    c. 42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]"

    d. 42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others[.]"

    e. 42 U.S.C. Section 12182(b)(1)(B) provides: "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual."

    f. 42 U.S.C. Section 12182(b)(1)(C) provides: "Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different."

    g. 42 U.S.C. Section 12182(b)(2)(ii) describes as discrimination: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"

    h. 42 U.S.C. Section 12182(b)(2)(iii) describes as discrimination: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]"

27. Plaintiff attempted to access and/or utilize Defendant's Mobile Website and App, but was unable to, and continues to be unable to enjoy full and equal access to the Mobile Website and/or understand the content therein because numerous portions of the Mobile Website do not interface with mobile VoiceOver screen reader software. Specifically, features of the Mobile Website that are inaccessible to VoiceOver screen reader software users include, but are not limited

to, the following (citing the WCAG 2.1 Level A and AA Guidelines):

  a. Guideline 1.3.2 – Meaningful Sequence is violated. A popup is displayed when a mobile screen reader user elects the Order Now button. This popup is not announced, and focus does not move to it when it is displayed. Focus appears to be on blank sections of the popup and elements from the underlying page were announced. A user can only start the online order if they know to swipe through all of the elements on the underlying page first. This takes approximately 31 swipes and then focus moves to the popup.

  b. On multiple screens throughout the app, including the "Holdings" screen, insufficient color contrast between the text and background makes the information difficult for Plaintiff to see.

  c. On many screens, including the app's Portfolio screen, the font size of informational content cannot be sufficiently scaled, making it difficult to view that info.

  d. On the "Online Mobile & Account Services" screen, headings are not defined, which make it difficult for Plaintiff to understand the content structure.

  e. On the "Feedback" screen, keyboard support is missing for the star-based rating system, which make it difficult for Plaintiff to access the functionality of this interactive element.

28. The fact that a portion of the WCAG 2.1 Level A and AA Guideline violations may be related to various third-party vendor platforms does not absolve Defendant of culpability. Because financial services organizations are places of public accommodation, their operators are subject to the requirements of Title III as well. 42 U.S.C. § 12181(7)(b). Those requirements include a prohibition against subjecting patrons with disabilities to discrimination "through contractual, licensing, or other arrangements," such as use of third-party vendors' inaccessible platforms for making reservations. 42 U.S.C. § 12182(b)(1)(A); *See Kohler v Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264-66 (9th Cir. 2015) (Pre-existing obligations under Title III of the ADA may not be avoided through contractual arrangements, and those obligations remain even where compliance is under control of another party); *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, *4 (C.D. Cal. January 24, 2018) (restaurant operators are liable for website and mobile

app accessibility where there is a nexus to the restaurants themselves).

29.  As the owner and/or operator and/or beneficiary of the subject website which serves as a gateway to Defendant's financial services organization, Defendant is required to comply with the ADA and the provisions cited above. This includes Defendant's obligation to create, maintain and operate a website that is accessible to Plaintiff so that he (as a visually impaired person) can enjoy full and equal access to the website and the content therein.

30.  With respect to its Mobile Website and App, Defendant has violated the ADA by failing to interface its Mobile Website with VoiceOver screen reader software utilized by visually impaired individuals (as specifically delineated within paragraph 23) either directly or through contractual, licensing, or other arrangements. Defendant's violations have resulted in Defendant denying Plaintiff accommodation on the basis of his disability:

   a. by depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation (42 U.S.C. § 12182(a));

   b. in the denial of providing Plaintiff the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

   c. in failing to afford Plaintiff the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

   d. by providing Plaintiff a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals (unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others) (42 U.S.C. § 12182(b)(1)(A)(iii));

   e. by failing to afford Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to the needs of the disabled individual (42 U.S.C. § 12182(b)(1)(B));

   f. notwithstanding the existence of separate or different programs or activities provided in accordance with this section, by denying Plaintiff the opportunity

    to participate in such programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

    g.  by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities (unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations) (42 U.S.C. § 12182(b)(2)(ii)); and,

    h.  by a failure to take such steps as may be necessary to ensure that disabled individuals are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden) (42 U.S.C. § 12182(b)(2)(iii)).

**31.** Plaintiff is continuously aware of the violations within Defendant's Mobile Website and App and is aware that it would be a futile gesture to attempt to utilize the Mobile Website as long as those violations exist unless he is willing to suffer additional discrimination.

**32.** Plaintiff is well aware that the ADA requires effective communications. However, long after the required date of compliance, many public accommodations refuse to comply leaving Plaintiff feeling excluded and rejected because he is disabled. As a result, Plaintiff has suffered (and continues to suffer) frustration and humiliation as the result of the discriminatory conditions present within Defendant's Mobile Website and App. By continuing to operate its Mobile Website with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. By encountering the discriminatory conditions within Defendant's Mobile Website and App and knowing that it would be a futile gesture to attempt to utilize the Mobile Website and App unless he is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice utilizing the same services

of public accommodations readily available to the general public and is deterred and discouraged from doing so. By maintaining a Mobile Website with violations, Defendant deprives Plaintiff the equality of opportunity offered to the general public.

33. Plaintiff has suffered (and will continue to suffer) direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA and conform its Mobile Website to WCAG 2.1 Level A and AA Guidelines.

34. Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from Defendant's non-compliance with the ADA with respect to its Mobile Website. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by Defendant when he visits the Mobile Website to test for compliance with the ADA. Plaintiff desires to access the Mobile Website to avail himself of the benefits, advantages, goods and services therein, and/or to assure himself that the Mobile Website is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the Mobile Website without fear of discrimination.

35. Plaintiff is without adequate remedy at law and has suffered (and will continue to suffer) irreparable harm. The Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief as requested herein.

36. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require Defendant to alter its Mobile Website to make it readily accessible to and usable by Plaintiff and other persons with vision impairments.

**WHEREFORE,** Plaintiff, hereby demands judgment against Defendant, and requests the following injunctive and declaratory relief:

    **i.** The Court issue a Declaratory Judgment that determines that Defendant's Mobile Website and App are in violation of Title III of the Americans with Disabilities Act,

    42 U.S.C.§ 12181 *et seq.*;

**j.**    The Court issue a Declaratory Judgment that Defendant has violated the ADA by failing to monitor and maintain its Mobile Website to ensure that it is readily accessible to and usable by persons with vision impairment;

**k.**    The Court issue an Order directing Defendant to alter its Mobile Website to make it accessible to, and useable by, individuals with disabilities to the full extent required by Title III of the ADA;

**l.**    The Court issue an Order directing Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Mobile Website for purposes of utilizing Defendant's Mobile Website and App, and during that time period prior to the Mobile Website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so that disabled individuals are not impeded from obtaining the goods and services made available to the public through Defendant's Mobile Website.

**m.**    The Court enter an Order directing Defendant to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time so as to allow Defendant to undertake and complete corrective procedures;

**n.**    The Court enter an Order directing Defendant to continually update and maintain its Mobile Website to ensure that it remains fully accessible to and usable by visually impaired individuals;

**o.**    The Court award attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205; and,

**p.**    The Court provide such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

    Respectfully submitted,

    s/ Lauren N. Wassenberg
    Lauren N. Wassenberg, Esq. (34083)
       *Attorney for Plaintiff*
    Lauren N. Wassenberg & Associates, P.A.
    33 SE 4th St., Ste. 100
    Boca Raton, Florida 33432
    (561) 800-0405
    WassenbergL@gmail.com

    s/ Glenn R. Goldstein
    Glenn R. Goldstein, Esq. (55873)
       *Attorney for Plaintiff*

Glenn R. Goldstein & Associates, PLLC
8101 Biscayne Blvd., Ste. 504
Miami, Florida 33138
(561) 573-2105
GGoldstein@G2Legal.net